## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ALEXANDER BAYONNE STROSS,**

    **Plaintiff,**

**v.**             **Case No:   6:19-cv-388-Orl-37LRH**

**CHARLES L. ROBERSON, JR.,**

    **Defendant.**

---

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT (Doc. 14)** |
| **FILED:** | **April 23, 2019** |

**THEREON** it is respectfully **RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

### I. Background

This copyright infringement action centers on Charles L. Roberson, Jr.'s [1] (Defendant) unauthorized use of Alexander Bayonne Stross' (Plaintiff) photograph of a home (Photograph). (Doc. 1 (Complaint)).   In the Complaint, the Plaintiff alleges that he created the Photograph,

---

[1] The Plaintiff is suing the Defendant in his individual capacity, d/b/a Pool Cleaning Winter Garden, and d/b/a High Level Domains.   (Doc. 1 at ¶ 10).

registered it with the United States Copyright Office on November 10, 2011 (Doc. 1-1),[2] and owns the copyright in the Photograph.   (Doc. 1 at ¶¶ 11-13).   The Plaintiff also alleges that the Defendant copied and distributed the Photograph on the internet to promote his pool cleaning business without the Plaintiff's permission.   (Docs. 1 at ¶¶ 15-18, 20; 1-2).   Based on these allegations, the Plaintiff asserts a single claim of willful copyright infringement in violation of 17 U.S.C. § 501 against the Defendant.   (*Id.* at ¶¶ 23-28).   The Plaintiff requests that the Court, among other things, enter a permanent injunction against the Defendant, and award him either actual or statutory damages, prejudgment interest, and attorney fees and costs.   (*Id.* at 5-6).

The Defendant was served on March 26, 2019 (Doc. 11), but he did not timely respond to the Complaint.   As a result, the Plaintiff moved for default on April 19, 2019 (Doc. 12), and the Clerk entered default against the Defendant that same day (Doc. 13).

The Plaintiff now moves for final default judgment against the Defendant, arguing that the allegations in the Complaint establish that the Defendant willfully infringed the copyright in the Photograph.   (Doc. 14 (the Motion)).   The Plaintiff requests default judgment consisting of: 1) a permanent injunction enjoining the Defendant from infringing the Plaintiff's copyrights; 2) an award of $150,000.00 in statutory damages; 3) prejudgment interest from November 2013; and 4) an award of attorney fees and costs.   (*Id.*).   In support, the Plaintiff filed declarations from himself and his attorney, Joel B. Rothman, Esq.   (Doc. 14-1; 14-2).   The Motion is now ripe for consideration.[3]

---

[2] The Photograph was assigned registration number VAu 1-088-759.   (Docs. 1 at ¶ 12; 1-1 at 2).

[3] It does not appear that the Motion was served on the Defendant, but service is not required on a party in default for failure to appear.   *See* Fed. R. Civ. P. 5(a)(2).

## II.     Standard of Review

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.   First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.   Fed. R. Civ. P. 55(a).   Second, after obtaining clerk's default, the plaintiff must move for default judgment.   Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted.   *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id*. (quoting *Twombly*, 550 U.S. at 570).   To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*. (citing *Twombly*, 550 U.S. at 556).   If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

---

[4] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.   *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested.  If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).  Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.  *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).  Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]"  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44.  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

III.     Analysis

   A.  Subject Matter and Personal Jurisdiction

   The Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and personal jurisdiction over the Defendant based on his residence and business in Florida (Doc. 1 at ¶¶ 4, 9-10).

   B.  The Entry of Default

   The Defendant was properly served via substitute service on March 26, 2019.   (Doc. 11); Fla. Stat. § 48.031(1)(a).   The Defendant had twenty-one days from the date of service to respond to the Complaint.   Fed. R. Civ. P. 12(a)(1)(A)(i).   The Defendant did not timely respond to the Complaint, and the Plaintiff moved for and the Clerk properly entered default against the Defendant. (Docs. 12; 13).

   C.  Copyright Infringement

   To establish a prima facie case of copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

   To satisfy *Feist*'s first prong, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)).   In a judicial proceeding, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."   17 U.S.C. § 410(c).   Once the plaintiff produces a certificate of registration, "the burden shifts to the defendant to demonstrate why the claim of copyright is invalid."   *Bateman*, 79 F.3d at 1541.

To satisfy *Feist*'s second prong, the plaintiff must establish that the "alleged infringer actually copied plaintiff's copyrighted material." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010). However, factual proof of copying is only part of satisfying the second prong. A plaintiff "must also prove that 'the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar.'" *Id.* (quoting *Lotus*, 49 F.3d at 813).

With respect to the first *Feist* prong, the Plaintiff alleges that he created the Photograph in 2010, registered it with the Register of Copyrights on November 10, 2011, and has owned the copyright in the Photograph throughout the relevant period. (Doc. 1 at ¶¶ 11-13). In support of these allegations, the Plaintiff attached evidence of the copyright registration to the Complaint. (Doc. 1-1).[5] The foregoing allegations and evidence establish that the Plaintiff is the author and copyright claimant of the Photograph, the Photograph was first published no earlier than 2010, and the effective date of the registration is November 10, 2011. (Docs. 1 at ¶¶ 11-13; 1-1). Since the effective date of the copyright registration is "before or within five years after first publication of the work," the copyright registration constitutes "prima facie evidence of the validity of the

---

[5] Rather than providing a copy of the actual certificate of registration, the Plaintiff provided a screenshot from the Copyright Office's website showing that the Photograph was registered on November 10, 2011. (Doc. 1-1). While a copy of the certificate of registration would be ideal, the undersigned is not aware of any authority requiring a plaintiff in a default judgment context to submit such a copy. Absent any authority to the contrary, the undersigned finds that the Plaintiff's allegations that he registered and owns the copyright in the Photograph (Doc. 1 at ¶¶ 12-13) coupled with evidence of that registration (Doc. 1-1) is sufficient to support the presumption that the copyright in the Photograph is valid. *See Geodetic Servs., Inc. v. Zhenghzou Sunward Tech., Co. Ltd.*, No. 8:13-cv-1595-T-35TBM, 2014 WL 12620804, at *5 (M.D. Fla. Apr. 4, 2014) (considering a motion for default judgment and finding that the first *Feist* prong was satisfied where the plaintiff only alleged "application for a registration certificate," it was the "owner" of the copyrighted work, the work was "original to the [Plaintiff] and constitutes copyrightable subject material," and it "complied with all statutory formalities under title 17 of the United States Code to maintain [the] action for copyright infringement.").

copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). Accordingly, based on the well-pled allegations in the Complaint and the evidence of copyright registration attached thereto, the undersigned finds that the Plaintiff has established the first *Feist* prong.

With respect to the second *Feist* prong, the Plaintiff alleges that the Defendant copied the Photograph and used the Photograph on the internet to promote his various businesses without the Plaintiff's permission. (Doc. 1 at ¶¶ 15-18, 20). In support, the Plaintiff attached screenshots from the Defendant's website showing his unauthorized use of the Photograph. (Docs. 1-2).[6] This evidence, which must be accepted as true, establishes that the Defendant copied and used the entire Photograph without the Plaintiff's permission. *Id*. Accordingly, based on the allegations in the Complaint and the attachments thereto, the undersigned finds that the Plaintiff has established the second *Feist* prong.

In light of the foregoing, the undersigned finds that the Plaintiff has established that the Defendant infringed the copyright in the Photograph in violation of 17 U.S.C. § 501.

### D. Relief

The Plaintiff seeks an award of statutory damages, prejudgment interest on those statutory damages, a permanent injunction enjoining the Defendant from infringing the Plaintiff's copyrights, and an award of attorney fees and costs. (Doc. 14 at 5-13). The undersigned will address each request in turn.

---

[6] The same evidence is attached to the Plaintiff's affidavit in support of the Motion. (Doc. 14-1 at ¶ 10 (citing Doc. 14-1 at 8-12)).

**1. Damages[7]**

The Plaintiff seeks $150,000.00 in statutory damages.   (Doc. 14 at 6-11).   For the reasons discussed below, the undersigned finds that the Plaintiff has established entitlement to statutory damages, but not in the amount requested.

"[A] copyright owner may choose between two types of damages: actual damages and profits or statutory damages." *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997).   Here, the Plaintiff contends that he cannot determine the true extent of his actual damages because the Defendant has not participated in this action.   (Doc. 14 at 8).   Therefore, the Plaintiff has elected to recover statutory damages.   (*Id*).

"The range of statutory damages is between $750 and $30,000 for each infringed work, . . . but the [Copyright] Act also allows the court in its discretion to increase . . . awards of statutory damages in cases involving willful infringement to $150,000 per work." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1271 (11th Cir. 2015) (internal alternations and quotation marks omitted) (citing 17 U.S.C. § 504(c)(1)-(2)).   The Court has wide discretion to set an amount of statutory damages.   *Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829, 852 (11th Cir. 1990).   In exercising this discretion, courts in this District have considered the following nonexclusive factors: 1) the expenses saved and the profits reaped; 2) the revenues lost by the plaintiff; 3) the value of the copyright; 4) the deterrent effect on others besides the defendant; 5) whether the defendant's conduct was innocent or willful; 6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and

---

[7] The undersigned has considered whether an evidentiary hearing should be held in determining if the Plaintiff is entitled to the damages he seeks.   Upon a review of the record, the undersigned finds that the materials attached to the Plaintiff's Motion constitute sufficient evidence for the Court to make an informed decision concerning the amount of damages the Plaintiff is entitled to recover.

7) the potential for discouraging the defendant.   *Bait Prods. Pty Ltd. v. Murray*, No. 8:13-cv-169-T-33AEP, 2013 WL 4506408, at *5 (M.D. Fla. Aug. 23, 2013) (quoting *Rolex Watch U.S.A., Inc. v. Lynch*, No. 2:12-cv-542-FtM-38UAM, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013)).

The Plaintiff premises his request for statutory damages on the amount he would have received had the Defendant purchased a license to use the Photograph.   The Plaintiff avers that he typically charges $6,000.00 per year for a "rights managed" license for his photographs, and that the Defendant has been using this specific Photograph without permission since November 2013. (Docs. 14 at 7; 14-1 at ¶¶ 8, 10, 14).   As a result, the Plaintiff claims that, at a minimum, he has suffered a total of $30,000.00 in lost licensing fees.   (Doc. 14 at 7).

The Plaintiff also argues that the $30,000.00 in lost licensing fees does not account for the effect the Defendant's infringement has had on the Photograph's scarcity value.   (*Id*.).   The Plaintiff claims that the following factors contribute to the Photograph's scarcity: its subject matter; obtaining approval to photograph the residence; ensuring that the weather conditions were ideal for taking the Photograph; and the use of advanced knowledge about taking and processing the Photograph.   (Doc. 14 at 7; 14-1 at ¶¶ 6-7).   Based on these factors, the Plaintiff claims that the Photograph is scarce and, to account for the lost scarcity value of the Photograph caused by the Defendant's infringement, the Plaintiff contends that a scarcity multiplier of five is warranted, which brings the Plaintiff's damages to $150,000.00.   (Doc. 14 at 7-8 (citing *Leonard v. Stemtech Int'l.*, 834 F.3d 376 (3d Cir. 2016)).   In addition, the Plaintiff argues that he has sufficiently established that the Defendant's infringement was willful and therefore the Court may and should award the maximum amount in statutory damages.   (*Id*. at 9-11).

The undersigned is not persuaded that the Plaintiff has shown that he is entitled to recover $150,000.00 in statutory damages.   "[S]tatutory damages are not intended to provide a plaintiff

with a windfall recovery; they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008) (internal quotation marks omitted). Here, the Plaintiff attempts to ground his claim for statutory damages in his actual damages. (Doc. 14 at 7-11). But the Plaintiff has not convincingly demonstrated that he has suffered anywhere near $150,000.00 in actual damages as a result of the Defendant's infringement.

The Plaintiff has provided sufficient evidence to support his claim for lost licensing fees. A claim for lost, past licensing fees is measured by what the plaintiff would have earned by licensing use of the copyrighted work to the infringing defendant. *Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008). To demonstrate entitlement to a reasonable licensing fee, the Plaintiff must show that the Photograph had a fair market value. *Id*. The Plaintiff can make this showing by demonstrating that he "previously received compensation for use of the infringed work" or by providing evidence of "benchmark licenses, that is, what licensors have paid for use of similar work." *Id*. at 1276-77. Here, the Plaintiff declares that he typically charges $6,000.00 for an annual license for his photographs, and that he would have charged the Defendant the same amount had he requested a license to use and display the Photograph. (Doc. 14-1 at ¶¶ 8, 14). In addition, the Plaintiff declares that the Defendant has displayed the Photograph without permission since at least November 2013. (*Id*. at ¶ 10). This uncontroverted evidence sufficiently establishes that $6,000.00 is a fair market value for the licensing fee that the Plaintiff would have received from the Defendant for each of the five years he used the Photograph without permission, which totals $30,000.00 in lost licensing fees.[8]

---

[8] The undersigned has also considered the Plaintiff's contention that Defendant's default has affected the Plaintiff's ability to determine how much the Defendant profited from its use of the Photograph. (Doc. 14 at 8, 11). However, considering the scope and nature of the Defendant's

The Plaintiff also claims that the Photograph is a unique and scarce image, and requests that the Court take this into consideration, along with the impact the Defendant's infringement has had on the fair market value of the Photograph.   (Doc. 14 at 7).   More specifically, the Plaintiff claims that a multiplier of five should be applied to his total lost licensing fees to account for the impact the Defendant's infringement has had on the fair market value of the Photograph.   (*Id*. at 7-8 (citing Doc. 14-1 at ¶¶ 6, 16-17)).   In support of this multiplier, the Plaintiff cites to the Third Circuit Court of Appeals' decision in *Leonard v. Stemtech Int'l.*, 834 F.3d 376 (3d Cir. 2016).   *Id*.

The *Leonard* decision is readily distinguishable from the facts of this case.   The plaintiff in *Leonard* alleged copyright infringement of photographic images of human bone marrow stem cells taken with an electron microscope.   *Leonard*, 834 F.3d at 382-85.   At the jury trial, the plaintiff's damages expert testified about the scarcity and exclusivity of the images, and recommended that a premium of three to five times the benchmark licensing fee should be applied to properly account for the fair market value of the images.   *Id*. at 385.   The jury awarded a verdict of $1.6 million to the plaintiff that accounted for this expert evidence.   *Id*.   The Third Circuit affirmed on appeal, finding that the jury did not err in considering this evidence, that the jury verdict properly accounted for the fair market value of the images, and that the verdict was not excessive.   *Id*. at 392-94.

The Photograph here is not comparable to the photograph in *Leonard*.   The images in *Leonard* required sophisticated technology and techniques to locate and photograph the stem cells. And while the undersigned does not doubt that the Plaintiff employed some level of skill in creating

---

use of the Photograph, the undersigned finds this contention has little, if any, impact on determining the amount of the statutory damages.   The Defendant used the Photograph on a website to market his pool cleaning business, which only serves select communities in the Orlando metropolitan area. (Doc. 1-2 at 2-6).   There is nothing in the record to suggest that this limited use, in and of itself, resulted in any profit to the Defendant.   Therefore, the undersigned is not persuaded that the Defendant's use of the Photograph resulted in any appreciable profit that must be accounted for in an award of statutory damages.

the Photograph, there is nothing particularly unique about the subject matter or what the Plaintiff was required to do to take the Photograph that would justify a similar – and extremely high – multiplier. The only fact that is at all persuasive to the undersigned is that the Plaintiff needed permission to enter private property to take the Photograph. It is therefore unlikely that other pictures of the same home are available for purchase or licensing. However, the undersigned is not persuaded that this fact (nor the other facts the Plaintiff points to in his Motion) supports a multiplier of five. Instead, the undersigned finds that a multiplier of one-and-a-half is sufficient to account for the scarcity of the Photograph, which results in a total statutory damages award of $45,000.00.

Since the undersigned recommends (and the Plaintiff seeks) an award of statutory damages in excess of $30,000.00, the Plaintiff must demonstrate that the Defendant's infringement was willful. *Yellow Pages Photos*, 795 F.3d at 1271. Willful infringement occurs "when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Arista Records, Inc. v. Beker Enterprises. Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (internal quotation marks omitted). In the Complaint, the Plaintiff alleges that on November 28, 2018 he sent the Defendant written notice requesting the he cease and desist from using the Photograph. (Doc. 1 at ¶ 22 (citing Doc. 1-3)). The Defendant, however, did not respond to the notice. (*Id*.). As a result, the Plaintiff alleges that the Defendant's infringement is willful. These allegations, which the undersigned accepts as true, support the Plaintiff's claim that the Defendant willfully infringed the copyright. *See Peer Intern. Corp. v. Max Music & Entm't, Inc.*, No. 03 Civ. 0996KMWDF, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004) (finding of willful infringement warranted where defendant disregarded notice of copyright and continued to infringe); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227-28 (7th Cir. 1991) (holding that defendant was a willful infringer based on fact that defendant received a letter stating that it could not broadcast

music without a license and that the defendant had demonstrated resistance to paying copyright fees in the past). Further, the Defendant's default supports an inference that he willfully infringed the copyright. *Arista Records*, 298 F. Supp. 2d at 1313 (finding that the court may infer that defendants willfully infringed the copyrights at issue based on the defendants' default). In light of the foregoing, the undersigned finds that the Plaintiff has sufficiently demonstrated that the Defendant willfully infringed the copyright at issue and, as a result, the Court may award more than $30,000.00 in statutory damages.[9]

In summary, the undersigned finds that the Plaintiff is entitled to a total of $45,000.00 in statutory damages ($30,000 for lost licensing fees and a multiplier of one-and-a -half to account for the scarcity of the Photograph). This amount strikes an appropriate balance between compensating the Plaintiff without providing him a windfall, as well as deterring the Defendant and others from further infringing activity.

## 2. Prejudgment Interest

The Plaintiff requests an award of prejudgment interest from November 2013 through the date judgment is entered. (Doc. 14 at 13). The Plaintiff, however, provides no argument or authority explaining why he is entitled to such relief, nor does he provide a computation of the prejudgment interest sought. (*See* Doc. 14). It is the Plaintiff's burden, not the Court's, to demonstrate that he is entitled to the relief sought in the Motion. The Plaintiff has failed to satisfy that burden with respect to his request for prejudgment interest, and given this failure, the undersigned finds that the Plaintiff should not be awarded prejudgment interest on the recommended statutory damages. *See McKennon v. NewsCastic, Inc.*, No. 6:18-cv-323-Orl-41DCI, 2018 WL

---

[9] The Plaintiff does not request that any multiplier be applied based on the Defendant's willful infringement. (*See* Doc. 14 at 6-11). Thus, the undersigned has not considered that issue.

5847424, at *7 (M.D. Fla. Sep. 7, 2018) (recommending denial of similarly deficient request for prejudgment interest) *report and recommendation adopted by*, 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018).

### 3. Permanent Injunction

The Plaintiff seeks a permanent injunction enjoining the Defendant "his employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with [him]" from: 1) "directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from either Plaintiff's copyrighted photographs or to participate or assist in any such activity;" and 2) "directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photographs or infringing photographs."   (Doc. 14 at 12-13).

A court may "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."   17 U.S.C. § 502(a).   A plaintiff seeking a permanent injunction must demonstrate the following: 1) it has suffered an irreparable injury; 2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) the public interest would not be disserved by a permanent injunction.   *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The Plaintiff avers that the Defendant's unlicensed use of the Photograph has caused irreparable injury because it may dissuade competing businesses from using the Photograph to market their business, and it may encourage others to use the Photograph without obtaining a license

to do so.   (Docs. 14 at 12-13; 14-1 at ¶ 15).   The undersigned has recommended an award of damages that would sufficiently remedy the injury caused by the Defendant's infringement, but those damages would not necessarily preclude further monetary and non-monetary injury if the Defendant continues to use the Photograph without the Plaintiff's permission.   Therefore, it is clear that the Plaintiff will continue to be harmed if the Defendant is not enjoined from further use of the Photograph.   There also appears to be no other remedies at law that would adequately compensate the Plaintiff while also ensuring the Defendant ceases his infringement.   Further, the Plaintiff would endure greater hardship than the Defendant if his use of the Photograph was not enjoined.   And finally, the public interest would not be adversely affected if the Defendant was enjoined from using the Photograph.   For these reasons, the undersigned finds that the Plaintiff is entitled to a permanent injunction against the Defendant, but, as discussed below, the proposed injunction goes too far.

The Plaintiff proposes to enjoin the Defendant from directly or indirectly infringing any of the Plaintiff's copyrights.   (Doc. 14 at 13).   It is axiomatic that "[i]njunctive relief should be limited in scope to the extent necessary to protect the interests of the parties."   *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003).   The proposed injunction goes too far because it includes all the Plaintiff's copyrighted works, of which there may be hundreds or thousands – the Plaintiff has provided no evidence on this point.   Nor has the Plaintiff provided any justification or cited any authority allowing such an expansive injunction in this particular situation (*see* Doc. 14 at 12-13).   In the absence of such argument, the undersigned is not persuaded that the broad injunction sought by the Plaintiff is appropriate.   Therefore, the undersigned finds that the injunction should be limited to the Photograph at issue in this case.   *See McKennon*, 2018 WL 5847424, at *7 (recommending a narrower permanent injunction limited to enjoining the defendant from infringing the specific photograph at issue in the case, even though plaintiff requested a nearly identical,

broader injunction enjoining infringement of all of plaintiff's copyrights without limitation).

### 4.  Attorney Fees and Costs

The Plaintiff argues that the Defendant's failure to defend this action and his willful infringement justify an award of attorney fees and costs under the Copyright Act.   (Doc. 14 at 11). Specifically, the Plaintiff seeks an award of $4,287.50 in attorney fees, and $587.35 in costs. (Docs. 14 at 11-12; 14-2).

A district court may award reasonable attorney fees and full costs to the prevailing party in a civil copyright-infringement action.   17 U.S.C. § 505.   The award of such fees is made at the court's discretion.   *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).   In determining whether to award fees and costs, the Court may consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" where such factors are faithful to the purposes of the Copyright Act.   *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 534 n. 19).

The Plaintiff has demonstrated that the Defendant willfully infringed the Plaintiff's copyright in the Photograph.   This willful infringement coupled with the Defendant's default provides a sufficient basis to award the Plaintiff his reasonable attorney fees and costs, because such an award will both compensate the Plaintiff for protecting his copyright against the Defendant's willful infringement and act as a deterrence to future infringement.   Therefore, the only remaining question is whether the Plaintiff's request for attorney fees and costs is reasonable.

### a.  Attorney Fees

The Court uses the familiar lodestar method in determining a reasonable fee award, which is calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable.   *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   There is a strong presumption that the lodestar figure is reasonable.   *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553-54 (2010).

The Plaintiff provided the following information concerning his counsels', paralegal's, and investigator's hourly rates and the time they spent on the case:

| Attorney/Paralegal/Investigator | Hourly Rate | Hours | Totals |
|---|---|---|---|
| Joel B. Rothman, Esq. | $395.00[10] | 3.2 | $1,264.00 |
| Alexander C. Cohen, Esq. | $325.00 | 6.5 | $2,112.50 |
| Jamie C. James, paralegal | $200.00 | 2.4 | $480.00 |
| Kimberly A. Abajian, investigator | $175.00 | 1.0 | $175.00 |
| | Total = | | $4,031.50 |

(Doc. 14-2).   In support of these figures, the Plaintiff's counsel, Mr. Rothman, provided a declaration addressing his (and only his) experience and the rates he and the others charged in this case.   (*Id*. at 1-2).   In addition to his declaration, Mr. Rothman provided a time sheet detailing the tasks he and the others performed in this case.   (*Id*. at 4).

As an initial matter, it is not clear what Ms. Abajian did in this case.   And the Plaintiff has provided no argument or authority as to why he is entitled to recover fees for the work Ms. Abajian performed in this case.   (*See* Doc. 14 at 11-12).   Given the lack of evidence and argument, the undersigned finds that the Plaintiff has not established that he should recover fees for the work Ms. Abajian performed in this case.   *See McKennon*, 2018 WL 5847424, at *9 (recommending that the

---

[10] Aa noted above, the Plaintiff is seeking an award of $4,287.50 in attorney fees.   This award, however, is premised on Attorney Rothman charging an hourly rated of $475.00.   There is no mention anywhere in the record that Attorney Rothman is actually seeking an hourly rate of $475.00.   Instead, Attorney Rothman declares that he only charged an hourly rate of $395.00 in this case, not $475.00.   (Doc. 14-2 at ¶ 3).   Therefore, the undersigned will consider whether the hourly rate that Attorney Rothman states he charged in this case is reasonable.

plaintiff not recover for the work performed by Ms. Abajian).

Turning to Attorneys Rothman, Cohen, and Ms. James, the undersigned finds that the time they spent working on this case is reasonable.   In addition, considering Mr. Rothman's 28 years of legal experience, his board certification in intellectual property law, and the undersigned's own experience about the prevailing market rate, *Norman*, 836 F.2d at 1299-1300, 1303, the undersigned finds Mr. Rothman's hourly rate of $395.00 to be reasonable.   However, as discussed below, the Plaintiff has not provided any support for Attorney Cohen's and Ms. James' requested hourly rates.

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted).   In determining whether an hourly rate is reasonable, the Court may consider the factors set forth in *Johnson v. Georgia Highway Express*[11] and it may rely on its own knowledge and experience of the prevailing market rate.   *See Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value"); *see also Johnson,* 488 F.2d at 717-19.   "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."   *Norman*, 836 F.2d at 1299 (citations omitted).

---

[11] The *Johnson* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.

Here, the Plaintiff has provided no information about Attorney Cohen's or Ms. James' experience.  (*See* Doc. 14 at 11-12; 14-2).  Absent such evidence, the undersigned has considered her own experience about the prevailing market rate.  In so doing, the undersigned finds that reasonable hourly rates for Attorney Cohen and Ms. James are $225.00 and $100.00, respectively.  *See McKennon*, 2018 WL 5847424, at *8 (reducing Attorney Cohen's and Ms. James' hourly rates to $225.00 and $100.00, respectively, where the plaintiff failed to provide any evidence or authority in support of the higher requested hourly rates).

The chart below details the undersigned's findings:

| Attorney/Paralegal/Investigator | Hourly Rate | Hours | Totals |
|---|---|---|---|
| Joel B. Rothman, Esq. | $395.00 | 3.2 | $1,264.00 |
| Alexander C. Cohen, Esq. | $225.00 | 6.5 | $1,462.50 |
| Jamie C. James, paralegal | $100.00 | 2.4 | $240.00 |
|  | **Total =** |  | **$2,966.50** |

In light of the foregoing, the undersigned finds that the Plaintiff is entitled to recover a total of $2,966.50 in attorney fees.   In addition, the undersigned finds that the costs sought by the Plaintiff – $400.00 for the filing fee and $187.35 for service of process – are both recoverable, *see Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S.Ct. 873, 881 (2019) (holding that an award of "full costs" in a copyright action is limited to those costs specified in 28 U.S.C. §§ 1821 and 1920), and reasonable. Accordingly, the undersigned finds that the Plaintiff is entitled to recover a total of $3,553.85 in attorney fees and costs.

**IV.     Conclusion**

Accordingly, it is respectfully **RECOMMENDED** that:

1.  The Motion (Doc. 14) be **GRANTED** as follows:

    a.  Default judgment be entered in the Plaintiff's favor and against the Defendant;

b. The Defendant his employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with him be permanently enjoined from:

    i.    Directly or indirectly infringing the Plaintiff's copyright in the Photograph with registration number VAu 1-088-759;

    ii.    Continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from the Photograph with registration number VAu 1-088-759, or to participate or assist in any such activity; and

    iii.    Directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of the Photograph with registration number VAu 1-088-759.

c. The Plaintiff be awarded a total of $45,000.00 in statutory damages against the Defendant.

d. The Plaintiff be awarded a total of $3,553.85 in attorney fees and costs against the Defendant.

2. The Motion (Doc. 14) be **DENIED** in all other respects.

3. The Plaintiff be directed to serve a copy of the Court's Order on this Report on the Defendant at his last known residential address via regular U.S. Mail.[12]

4. The Clerk be directed to close the case.

---

[12] The undersigned is recommending this notice to ensure that the Defendant is made aware of the terms of the injunction.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 3, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy